## Court of Appeals.

November 28, 1893.

### PEOPLE v. LEONARDO LARUBIA.

(55 St. Rep. 457; 140 N. Y. 87.)

1. Trial—Jury.

The use of a peremptory challenge, after a challenge for cause has been overruled, precludes the party from availing himself from any exception taken on the trial of the challenge for cause.

2. Same.

Where an error is committed on the trial of a challenge for cause, it becomes merely technical when, after filling the panel, it appears that the use of the peremptory challenge did no harm to the defendant, and such error is not available to authorize a reversal of the conviction.

3. Evidence—Homicide.

The fact that the defendant acted without adequate provocation or with reckless disregard of human life in committing the offense charged, cannot be proved by showing his reckless conduct on other occasions.

4. Same—Declarations.

The declarations of a third person to defendant, where it does not appear that it was called out by anything said by the latter, or that he replied or in any way assented thereto, are not admissible.

Appeal from judgment of the supreme court, general term, first department, reversing the judgment of the court of oyer and terminer convicting defendant of murder in the second degree.

Henry B. B. Stapler, for appellants.

Stephen S. Blake, for respondent.

ANDREWS, Ch. J.—It is a decisive answer to the assignment of error in respect to the ruling of the trial judge in the challenge of the juror McKinley that the defendant subsequently challenged him peremptorily and that when the panel was full and the jury was sworn there remained to the defendant thirteen peremptory challenges unused. It is plain that the defendant was not harmed by any error which may have been committed by the trial judge on the trial of the challenge of the juror McKinley for cause. The objectionable juror did not sit on the trial. The defendant was not deprived of any advantage by being compelled to use a peremptory challenge in order to exclude McKinley from the panel. The jury which sat was, so far as appears, accepted by the defendant without objection. The defendant did not need the peremptory challenge used in excluding McKinley for any other purpose, as is conclusively shown by the fact that when the jury was accepted his right of exclusion had not been exhausted.

There has, we think, been some misapprehension as to the rule governing appellate courts in reviewing decisions of trial courts overruling challenges for cause made by defendants in criminal cases.

The cases of People v. Bodine, 1 Den. 281, and Freeman v. People, 4 id. 9, which were much considered, established the principle that an error in the ruling of a trial judge on the trial of a challenge for cause, interposed by the defendant, to which exception was duly taken, was not waived by the omission of the defendant to exercise the right of peremptory challenge, although when the jury was completed he had peremptory challenges unused. It is unnecessary to repeat the argument by which this conclusion was maintained. A reference to the opinions of Judge Beardsley in those cases will disclose the grounds upon which the court rested its judgment.

This court in People v. McQuade, 110 N. Y. 284; 18 St. Rep. 288, followed the decisions in People v. Bodine and Freeman v. People upon this point. In the McQuade case three jurors challenged by the defendant for bias were held by the trial court to be competent, and to this ruling exception was taken by the defendant. The challenged jurors sat as jurors in the case. This court held that the jurors challenged were not

competent, and that the challenges should have been sustained. The point was taken in behalf of the People that the defendant could have challenged them peremptorily, and that no legal injury resulted from the erroneous ruling since it appeared that when the jury was sworn the defendant had four available peremptory challenges. The court overruled this contention upon the authority of the two cases referred to.

The question now presented is quite different. McKinley did not sit as a juror. The defendant did not see fit to stand upon his exception to his competency, but excluded him upon peremptory challenge, and when the jury was sworn he had a large number of peremptory challenges unused. The case of Freeman v. People is a precise authority upon this question. In that case some of the challenged jurors were allowed to sit and others were peremptorily challenged after the challenge for cause by the defendant had been overruled. It was held that as to the jurors who, after challenge for cause had been overruled, were excluded upon peremptory challenge, the exceptions taken upon the trial of the challenge were unavailable. Beardsley, J., said: "Various exceptions were taken by the prisoner's counsel to points made and decided in disposing of their challenges; and although the several jurors thus challenged were ultimately excluded by the peremptory challenges of the prisoner, it is now urged that these exceptions are still open to examination and review in this court. I think otherwise. The prisoner had the power and right to use his peremptory challenges as he pleased, and the court cannot judicially know for what cause or with what design he resorted to them. He was free to use or not to use them as he thought proper; but having resorted to them, they must be followed out to all their legitimate consequences. Had he omitted to make peremptory challenges, his exceptions growing out of the various challenges for cause would have been regularly here for review. But he chose by his voluntary act to exclude these jurors; he thus virtually and, as I think, effectually blotted out such errors, if any, as had previously occurred in regard to them."

This decision of the court in Freeman v. People, that the use of a peremptory challenge after challenge for cause has been

overruled precludes the party from availing himself of any exception taken on the trial of the challenge for cause, has never been overruled. The point was not involved in the Mc-Quade case. The doctrine was explained and perhaps qualified in People v. Casey, 96 N. Y. 115, which held that it did not apply in a case where it appeared that before the jury was fully impanelled all the peremptory challenges of a defendant had been exhausted. In that case the court said: "Where, by the erroneous rulings of the court, a defendant is obliged to exhaust his peremptory challenges, it is clear he is harmed and has just cause to complain." In People v. Carpenter, 102 N. Y. 240; 1 St. Rep. 648, the doctrine of Freeman v. People was in substance reasserted by Ruger, Ch. J., but the decision was placed on the ground that the jurors challenged were competent.

The supreme court of the United States has applied the rule declared in Freeman v. People in a case where jurors challenged for cause were subsequently excluded on peremptory challenge, there being when the jury was sworn peremptory challenges unused. Hopt v. Utah, 120 U. S. 436; Spies v. Illinois, 123 id. 168. We think the doctrine of Freeman v. People, as explained in People v. Casey, is founded in reason and should be adhered to. If error was committed on the trial of the challenge for cause, it became merely technical when, after filing the panel, it appeared that the use of the peremptory challenge did no harm to the defendant. Section 542 of the Criminal Code declares: "After hearing the appeal the court must give judgment without regard to technical errors or defects, or to exceptions which do not affect the substantial rights of the parties." This rule applies in respect to the point just considered. We are unable, therefore, to agree with the general term that error committed on the trial of the challenge for cause was unavailable to authorize a reversal of the conviction. But we think the reversal should be sustained for error in the admission of evidence.

The defendant was convicted of murder in the second degree for killing one Riverito by shooting with a pistol on the evening of November 15, 1891. There was much doubt on the evidence as to the grade of the offense. The deceased sought the quarrel. He committed a gross indignity upon the person of the

defendant. Afterwards, when the latter left the urinal, the deceased followed him and knocked him down, prompted apparently by jealousy. The deceased had formerly lived in illicit relations with one Rosa Dadurno, who afterwards lived with the defendant. There is great contradiction in the evidence as to the circumstances of the shooting, and upon the point whether it occurred while the deceased was continuing his assault on the defendant or after he had discontinued it. The face and head of the defendant after the affray were found to be very much bruised and cut and his person was covered with blood. It was claimed that this in part at least was the result of blows inflicted at the time of his arrest.

On the trial the People were permitted to show that in July previous to the November when the homicide was committed, on the occasion of a quarrel between Rosa Dadurno and a woman named Domenica Manchesi in relation to some money transactions, the defendant came up and interposed in the quarrel in behalf of Rosa Dadurno, and drew a revolver. The evidence was objected to and a motion was made in behalf of the defendant that it should be stricken out, which was denied, and exception was duly taken. This evidence was incompetent and was calculated to prejudice the jury. The fact that the defendant shot the deceased with a pistol which he carried on his person was undisputed. It had been proved by several witnesses. The purpose of the evidence plainly was to show that the defendant was of a quarrelsome disposition, and was ready to use a pistol on any occasion, without any adequate justification. The evidence did not explain or tend to explain the relations between the defendant and the deceased, nor did it throw any light upon the issue whether the defendant, in shooting Riverito, acted without adequate provocation or with a reckless disregard of human life. If it was admitted as the basis for such an inference, it was error, because the facts sought to be inferred could not be proved by showing his reckless conduct on other occasions, and no other reason for its admission is apparent.

We are also of opinion that error was committed in permitting a witness to testify to the declarations of Rosa Dadurno to the defendant, made some months prior to the homicide, as

follows: "If Riveritos life is not taken we will not be happy." It does not appear that the declaration was called out by anything said by the defendant, or that he made any reply to it, or in any way assented to it. So far as the record shows this was the only reference made to the deceased on this occasion. We can perceive no ground upon which the admission of this evidence can be justified. It was not offered to affect the credibility of Rosa Dadurno. She had not been examined as a witness. The fact that Rosa Dadurno entertained malevolent feelings towards the deceased, and expressed them to the defendant, and that he remained silent, does not justify an inference that he entertained the same feelings, or shared in the belief that the taking of Riverito's life was essential to his happiness.

For the errors mentioned we think the judgment of the general term reversing the conviction should be affirmed.

All concur.