DE HIERAPOLIS v. LAWRENCE et al.

(Circuit Court, S. D. New York. February 17, 1902.)

1. **CREDITORS' BILL—MULTIFARIOUSNESS.**

    A creditors' bill is not multifarious, because based on two several judgments both in favor of complainant and against the same defendant, nor because it attacks as fraudulent a conveyance of property in trust from the judgment defendant to certain of his codefendants, by which an annuity was reserved to the grantor, and also an assignment of such annuity to other codefendants; the relief sought being in the alternative.

2. **SAME—SUFFICIENCY OF ALLEGATIONS OF FRAUD.**

    A creditors' bill which alleges the ownership by the judgment defendant of certain property, that he conveyed it to his codefendants without consideration, reserving an annuity during his life, that such conveyance was made for the purpose and with the effect of hindering, delaying, and defrauding his creditors, including complainant, and was merely colorable, sufficiently alleges fraud; it being unnecessary to set out more in detail the circumstances of the transaction.

3. **SAME—PROPERTY WHICH MAY BE REACHED—ANNUITY.**

    An annuity, reserved for the individual benefit of the grantor in a conveyance of all of his property in trust to provide for the payment of his debts and the support of his family, is liable for his debts, and may be subjected by a creditors' bill in the hands of one to whom he has assigned it, without consideration, for the purpose of placing it beyond the reach of creditors.[1]

In Equity. Creditors' suit. On demurrer to bill. See (C. C.) 99 Fed. 321.

Theodore B. Chancellor, for plaintiff.

Norman G. Johnson and John B. Talmage, for defendants.

WHEELER, District Judge. The defendant Isaac Lawrence, having a large amount of real estate in the city of New York, executed and delivered this instrument:

"This indenture, made the 28th day of July, 1893, between Isaac Lawrence, now living at Bar Harbor, Me., of the first part, and Joseph P. Bass, of Bangor, Me., and Lee Gwynn Lawrence, wife of the party of the first part, parties of the second part, witnesseth: That whereas the party of the first part is desirous of making suitable provisions for himself and his wife and children out of his property, now for such purpose, and in consideration of one dollar to the party of the first part in hand paid by the parties of the second part, the receipt whereof is hereby acknowledged, the party of the first part hereby grants, conveys, and transfers unto the parties of the second part, and their successors, all of the property of the party of the first part, both real and personal, wheresoever situated, in trust, neverthe-

---

[1] See Creditors' Suit, vol. 14, Cent. Dig. § 37 [c, d, e, h, j]; Fraudulent Conveyances, vol. 24, Cent. Dig. § 678 [k, l].

less, to and for the following uses and purposes: First, to pay all legal costs and expenses in or about the creation and execution of the trust herein contained; second, to take possession of all such real estate, and collect and receive all such personal estate; third, to receive all proceeds of the real estate of the party of the first part, if any shall be sold in the pending action for partition brought by James G. R. Lawrence; fourth, to pay all debts and liabilities of the party of the first part now existing, whether entered into for the benefit of his wife or her property, or secured by mortgage or other liens thereon, or otherwise created, and for that purpose to mortgage all or any of the real estate hereby conveyed or intended so to be; fifth, to invest and keep at interest all moneys to be realized from the property hereby conveyed and transferred; sixth, to lease and rent the real estate hereby conveyed for such time as the parties of the second part shall think best; eighth, to pay all taxes, assessments ordinary and extraordinary, repairs, insurance, or other charges upon or affecting the property hereby conveyed or transferred, and, in case of loss or injury to any building on the property, by fire or otherwise, to rebuild and repair the same with moneys realized from insurance, and, if deemed necessary by the parties of the second part, to raise other moneys by mortgage on the property hereby conveyed, and expend the same in such rebuilding; ninth, out of the income (net) of the said property to pay annually to the party of the first part during his life, if he shall die during the existence of this trust, in equal quarterly payments, the sum of three thousand dollars; tenth, to pay over to the said Lee Gwynn Lawrence the balance of the net income of said property for the support of herself and the children of her and the party of the first part so long as she shall live and remain unmarried after the death of the party of the first part."

The plaintiff brought two suits against him in the state courts, and before judgment he assigned the $3,000 annuity reserved to himself to the defendant Johnson, who assigned it to the defendant Lee Gwynn Lawrence. The plaintiff recovered judgments in his suits against the defendant Isaac Lawrence,—one in the city court of New York for $1,101.95, and one in the supreme court in the county of New York for $3,193.40, affirmed in the appellate division (67 N. Y. Supp. 1131), with $109.06 costs,—which were duly docketed, and on which executions issued and were returned unsatisfied. This suit is brought against the trustees under the conveyance, the wife and children individually, and against the defendant Johnson and the wife as assignees of the $3,000 annuity, to reach the property for the satisfaction of these judgments. The bill is demurred to for multifariousness in various ways, and for want of sufficient allegations of fraud in the conveyance and assignment to set them aside, and for want of equity generally.

The judgments are separate, and the relief would be against different persons if the conveyance should be found wholly void from those it would be against if that should appear to be valid and the assignment of the annuity of $3,000 to be fraudulent and void; but this does not necessarily make the bill multifarious, either as to parties or subjects. The judgments are between the same parties, and satisfaction of them is sought out of the same property, affected by the same transactions in the same way; and relief in respect to them may as well be sought in one suit in equity, as one suit may be maintained for infringement of two or more patents by the same machine, which it is well settled may be done. The suit arises upon the first conveyance, and all who were parties to it or who claim under it are proper parties, whether its validity respecting all the property covered by it, or its effect in reserv-

ing the $3,000 annuity, is to be tried and determined. It also arises upon the assignments of the annuity, which was a part of the property, and all who participated in them are also proper parties, although the relief may vary; for it is a province of a court of equity to adapt the remedy to the varying circumstances of parties and classes of property that may be before it, according to their respective rights and liabilities. In this view the multifariousness relied upon all disappears.

Good pleading requires that the substantial facts out of which the rights and liabilities sought to be enforced arose should be alleged, but not that the circumstances out of which these facts arise and are to be made to appear should be in detail set forth. This bill well alleges the ownership of the property by the debtor, its conveyance with reservation of the $3,000 annuity, and that the conveyance—

"Was made without any consideration, and was and is invalid, null, and void, and was made by the defendant Isaac Lawrence, and accepted by the defendants Joseph P. Bass and Lee Gwynn Lawrence, for the purpose and with the intent to hinder, delay, cheat, and defraud the creditors of the said Isaac Lawrence and the plaintiff, and to place the said property beyond the reach of the creditors of said Isaac Lawrence and the plaintiff, and to prevent the plaintiff from collecting the amount of the said judgments aforesaid, and that the effect of the said deed, conveyance, and transfer is to hinder, delay, cheat, and defraud the creditors of said Isaac Lawrence and plaintiff, and to prevent the collection of the amount of said judgments aforesaid, and that the said deed, conveyance, and transfer were merely colorable, and that the use, benefit, and enjoyment of said property, and of the rents, issues, and profits thereof, remained and still remains in the defendant Isaac Lawrence, but that the defendants Joseph P. Bass and Lee Gwynn Lawrence still possess and hold said property or its proceeds under said deed, conveyance, and transfer aforesaid, and that said property is worth approximately three hundred thousand dollars"; that the assignment of the $3,000 annuity was "made by the said defendant Isaac Lawrence to the said defendant Norman G. Johnson, was made without any consideration, and was and is invalid, null, and void, and was made by the said defendant Lawrence and accepted by the said defendant Johnson for the purpose and with the intent to hinder, delay, cheat, and defraud the creditors of the said Isaac Lawrence and plaintiff, and to place the said property beyond the reach of the plaintiff and the creditors of the said Isaac Lawrence, and to prevent plaintiff from collecting the amount of the said judgments aforesaid; that the effect of the said alleged sale and transfer by the said defendant Lawrence to the said defendant Johnson as aforesaid was and is to hinder, delay, cheat, and defraud the creditors of the said Isaac Lawrence and plaintiff, and to prevent the collection of the amount of plaintiff's said judgment aforesaid"; and that "at the time said alleged sale and transfer was made by the said Norman G. Johnson to the said defendant Lee Gwynn Lawrence the said Lee Gwynn Lawrence had knowledge and notice of all the circumstances surrounding the transfer of said interest and income by defendant Isaac Lawrence to the defendant Norman G. Johnson as aforesaid, and had knowledge of the fact that said transfer from Isaac Lawrence to Norman G. Johnson was without consideration, and was invalid, null, and void, and was made and accepted for the purpose and with the intent to hinder, delay, cheat, and defraud the creditors of the said Isaac Lawrence and plaintiff, and to place the said property beyond the reach of the plaintiff and the creditors of the said Isaac Lawrence, and to prevent the plaintiff from collecting the amount of the said judgment aforesaid, and that the effect of the said transfer by the said Lawrence to the said Johnson was and is to hinder, delay, cheat, and defraud the creditors of the said Isaac Lawrence and plaintiff, and to prevent the plaintiff from collecting the amount of plaintiff's judg-

ments aforesaid; that the said alleged sale and transfer made by said Johnson to the said Lee Gwynn Lawrence was made without any consideration, and was and is invalid, null, and void, and was made by the said defendant Johnson to the said defendant Lee Gwynn Lawrence for the purpose and with the intent to hinder, delay, cheat, and defraud the creditors of the said Isaac Lawrence and plaintiff, and to place the said property beyond the reach of the plaintiff and the said creditors of the said Isaac Lawrence, and to prevent the plaintiff from collecting the amount of said judgment aforesaid."

These seem to be fully sufficient allegations of fraudulent purposes of those concerned, respectively, in making the conveyance and assignment. This conveyance was before this court with reference to another judgment in favor of the plaintiff against the defendant Isaac Lawrence, upon questions made by demurrer as to the jurisdiction of the court and the equity of the bill, in De Hierapolis v. Lawrence (C. C.) 99 Fed. 321. No reason has now been made to appear why the conclusion then reached that at least the $3,000 annuity arising out of the property of the debtor, and reserved to and belonging to him, should not be liable for his debts, the same as any property of any other debtor, not exempt, is liable for his debts. No principle of law is known, or case asserting it shown, whereby a person can put his property liable for his debts into the hands of a trustee, and reserve any part of it to himself, and thereby make it exempt from his debts. The law of New York as settled by the state courts is conceded in the brief of defendants to be otherwise. The case chiefly relied upon in this behalf is Nichols v. Eaton, 91 U. S. 716, 23 L. Ed. 254, brought by an assignee to reach property bequeathed to trustees by the mother to lay out the use of for, or transfer a part of absolutely to, the bankrupt, in their discretion. The question was whether the bankrupt had title to any of the property, and as to this it was urged that the giving of the discretion was by the policy of the law equivalent to a direction to transfer that part. Upon this question Mr. Justice Miller said:

"The two cases of Twopeny v. Peyton, and Godden v. Crowhurst, above cited from 10 Sim. [487, 642], seem to be in conflict with this doctrine; while the cases cited in appellant's brief go no further than to hold that when there is a right to support or maintenance in the bankrupt, or the bankrupt and his family, a right which he could enforce, then such interest, if it can be ascertained, goes to the assignee." And, further on, that "this constitutes the dividing line in the cases which are apparently in conflict."

What would go to an assignee in bankruptcy may be reached by a creditor. Here was a reservation by this judgment debtor of this annuity for himself, and of support for his wife and children, which by law rested upon him, out of his own property, which he could well enforce, and which the doctrines of that case do not cut off, but well recognize.

Demurrer overruled; defendants to answer over by March 15th.