## HAWKINS v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit. June 5, 1902.)

### No. 771.

1. CRIMINAL PROCEDURE—JURORS—CHALLENGE.

Under Act March 3, 1899 (providing a Code of Criminal Procedure for Alaska) § 129, providing that all challenges to jurors shall be taken first by the defendant and then by the plaintiff, and the defendant shall exhaust his challenges to a particular juror before the plaintiff begins, all challenges shall be taken to each juror as he is drawn and appears and before another juror is drawn, unless the court, for good cause shown, shall permit a challenge to be taken afterwards, and before the number of the jury is complete, and section 130, defining the order in which challenges shall be made, but providing that either party may take peremptory challenge at any time before his right of challenge ceases, the right of challenge to each juror ceases when such juror is accepted, and defendant cannot return to and challenge peremptorily without cause a juror who has been passed and accepted.

2. SAME—CHALLENGE OUT OF ORDER—CAUSE.

The mere fact that a defendant under indictment prefers to exercise the right to use his last peremptory challenge against a juror who has been passed and accepted instead of against the last juror called, who is still subject to challenge, is not sufficient cause to entitle him to make such challenge.

3. SAME.

After the jury is completed and sworn, and the district attorney has made his opening statement, a request to challenge a juror peremptorily, made by defendant on the ground that he has just learned that such juror had expressed an opinion as to the guilt or innocence of defendant, unfavorable to him, comes too late.

4. SAME—CHALLENGE FOR CAUSE—DENIAL—PREJUDICE.

Where, after defendant's challenge of jurors for actual bias was denied, he challenged them peremptorily, and when the jury was completed he had not exhausted his peremptory challenges, the error, if any, in denying the challenges for cause, was not prejudicial.

5. SAME.

Where, on a trial under an indictment, defendant's challenge of a juror for actual bias was erroneously denied, he may rely on such error, though he has not exhausted his peremptory challenges, since he cannot be required to use such challenges against jurors who are shown on examination to be disqualified.

6. SAME—ACTUAL BIAS—EVIDENCE.

Where defendant was indicted with two others for robbery, and one had been tried and convicted, the fact that a juror had read all the published account of such trial, and heard the matter discussed by persons who listened to the trial, and formed a fixed opinion as to the guilt or innocence of the one tried, and had formed an opinion as to the guilt or innocence of the defendant, but had no such opinion at that time, and, if selected as a juror, would try the case impartially, from the law and evidence produced on the trial, did not render denial of the challenge error, defendant having two peremptory challenges remaining.

7. CONVICTION OF CODEFENDANT—COMMENT BY COURT.

Where defendant was indicted with two others for robbery, one of whom had been tried and convicted, and while examining a juror defendant's counsel asked if "he had an opinion as to the guilt or innocence of" the one so convicted, a remark by the court, in answer to such question, that "that is one of the things that is an established fact in this community," was error.

¶ 3. See Jury, vol. 31, Cent. Dig. § 623.

In Error to the District Court of the United States for the Second Division of the District of Alaska.

The plaintiff in error, together with George Allen and Thomas Dolan, were jointly charged with the crime of robbery in an indictment filed in the district court of Alaska, Second division, on the 23d day of January, 1901. The indictment charged that the defendants, on the 21st day of December, 1900, in the district aforesaid, did wrongfully, unlawfully, and feloniously take, steal, and carry away from the person of R. J. Embleton, and against his will, and by force and violence to his person, the following described personal property, namely, one piece of paper money of the dominion of Canada of the denomination and value of $100; two pieces of paper money of the dominion of Canada, each of the denomination and value of $50; four pieces of paper money of the dominion of Canada, each of the denomination and value of $20; one piece of paper money of the dominion of Canada of the denomination and value of $10 (a more particular description of each or any of said pieces of paper money aforesaid being to the grand jury unknown); also one gold watch, of the value of $75,—all the personal property of the said R. J. Embleton. After a motion to quash and set aside the indictment had been interposed and denied, and demurrer to the indictment overruled, a separate trial of the defendants was demanded, and allowed by the court. The trial of the defendant Allen was commenced before the court and a jury on February 11, 1901, and resulted in a verdict of guilty being returned by the jury on February 15, 1901. The trial of the defendant in this case was commenced before the court and a jury on February 18, 1901, and resulted in a verdict of guilty being returned by the jury on February 21, 1901. In impaneling the jury to try the case, the following proceedings took place: When the first juror was called, the defendant requested the court to have 12 jurors called into the box before commencing the examination of any juror. This request was denied, and the defendant excepted to the ruling of the court. This juror was afterwards excused for cause. The second juror was called, and, after being examined as to his qualifications to serve as a juror, he was challenged by the defendant for actual bias. The court denied the challenge, and the defendant excepted. Thereupon the court directed the defendant to exercise his right to a peremptory challenge at that time. The defendant requested of the court that the jury box be filled, and the jurors passed for cause, before the defendant should be required to exercise his right to a peremptory challenge. The court denied this request, and directed the defendant to then and there exercise his right of peremptory challenge with respect to the juror then in the box, or waive his right afterwards to challenge the said juror peremptorily. To this ruling the defendant excepted, on the following grounds: "First. That under chapter fourteen of title two of the Penal Code of the district of Alaska the defendant was not bound to exercise his right of peremptory challenge to jurors until there were in the jury box twelve persons whom the court had adjudged to be competent jurors. Second. That under chapter fourteen of title two of the Penal Code of the district of Alaska the defendant had the right to make a peremptory challenge of any juror at any time before his right of challenge ceased, and that his right of challenge did not cease until the jury were complete, and sworn to try the cause. Third. That the said ruling of the court tended to abridge defendant's right to a trial by a fair and impartial jury, and did impair defendant's power of selecting a fair and impartial jury and exercising his right of peremptory challenge. Fourth. That the said ruling of the court in effect deprived the defendant George Hawkins of the right of peremptory challenge." The defendant thereupon, in obedience to the ruling of the court, but under protest, at said time challenged the juror peremptorily. Five other jurors were called to the box at different times, and severally examined as to their qualifications to serve as jurors, and were challenged by the defendant for actual bias. The challenges were denied by the court, and thereupon the defendant, in obedience to the ruling of the court, but under protest, immediately after their examination had been completed, severally challenged the jurors peremptorily, and they were excused. Four other jurors were likewise called to the box at

different times, and severally examined as to their qualifications to serve as jurors, and, though not challenged by the defendant for actual bias, the defendant, in obedience to the ruling of the court, but under protest, immediately after the examination of said jurors had been completed, challenged the said jurors peremptorily, and they were excused. Ten other jurors were also called to the box at different times, and examined as to their qualifications, and, although not challenged for actual bias, or peremptorily at the time their examinations were completed, the court required the defendant to exercise his right of peremptory challenge at that time. The defendant, claiming the right to reserve his peremptory challenge to jurors until there were in the jury box 12 persons whom the court had adjudged to be competent jurors, declined to exercise his peremptory challenge at the time he was so directed by the court. Accordingly, under the direction of the court, these 10 jurors were severally sworn to try the case. One juror was called to the box and examined as to his qualifications, and challenged by the defendant for actual bias. The challenge was denied by the court, and the juror was sworn to try the case. After 11 jurors had been examined and accepted and sworn to try the case, the following proceedings took place in the course of the examination of the juror T. C. West: When the examination of this juror as to his qualifications had been completed, the court required the defendant to exercise his right of peremptory challenge to the said juror, or to accept the said juror, and waive his right to thereafter challenge him peremptorily. The defendant, in obedience to the ruling of the court, but under protest, passed the said juror as to any peremptory challenge, whereupon the juror was accepted by counsel for the government. Thereupon the defendant, having exercised nine peremptory challenges, made under the ruling of the court, but under protest, then asked leave of the court to exercise a peremptory challenge as to the juror Ike Powers, the fifth juror sworn to try the case, before the said T. C. West should be sworn to try the case. The court denied this request. The defendant excepted to the ruling of the court denying the said request, upon the grounds: First, that at the time the said juror T. C. West was passed by the counsel for the defendant as to any challenge for cause and accepted by the government the said defendant was then entitled to exercise 10 peremptory challenges to the said panel of 12 jurors then in the box; second, that at the time the said defendant requested to exercise a peremptory challenge to the said juror Ike Powers he then had a right to exercise the said peremptory challenge, and his right of exercising a peremptory challenge had not ceased; third, that the peremptory challenges theretofore exercised by the said defendant were exercised under protest, and under an erroneous ruling of the court with reference to the exercise of peremptory challenge. The exceptions were allowed, and thereupon the juror T. C. West was sworn as the twelfth juror to try the case. Subsequently, after the district attorney had opened the case to the jury for the prosecution, but before any evidence had been introduced in the case, counsel for the defendant made application to the court, upon information received by him after the swearing in of the juror as to the answers made by him to the effect that he had no opinion touching the guilt or innocence of the accused, and desired then to reexamine this juror upon the subject of his qualifications upon the ground of actual bias. Counsel announced that he expected to show that during the recess he had received the information for the first time, and that he had no means of knowing of it at the time the juror was passed both for cause and peremptorily. The court denied the application. Defendant's counsel then asked leave of the court to prepare affidavits showing that this juror had expressed an opinion with reference to the guilt or innocence of the accused, and an opinion unfavorable to the accused. The defendant's counsel also asked permission to further examine this juror touching his qualifications to act in said cause. This request was denied by the court. Thereupon counsel for the defendant requested leave to exercise a peremptory challenge as to the juror T C. West. This request was denied, and an exception taken. While the examination of George L. Verge, the ninth juror called to the box, was in progress, he was asked by counsel for the defendant, in the hearing of the jurors, as to whether he had at that time any opinion as to the guilt

or innocence of the defendant. George Allen. To this question the district. attorney objected, on the ground that it was incompetent, irrelevant, and: immaterial, whereupon the court said, "That is one of the things that is an established fact in this community." To this remark counsel for defendant excepted upon the grounds: First, "That, as appears from the indictment herein and the proceedings herein, the defendant George Allen was charged, jointly with the said George Hawkins and Thomas Dolan, with the crime alleged in the indictment; second, that the said remark of the court was improper, and prejudicial to the substantial rights of the defendant George Hawkins." The exception was allowed, and, after further examination of the juror, he was sworn to try the case. The case has been brought here upon. a writ of error, assigning errors in the proceedings connected with the im- paneling of the jury, in the instructions given to the jury, and in the refusal of the court to give to the jury certain instructions requested by the de- fendant.

John B. Allen and James E. Fenton, for plaintiff in error.

Joseph K. Wood, U. S. Atty. Second Division, D. Alaska (Marshall B. Woodworth, U. S. Atty. N. D. Cal., of counsel).

Before GILBERT, ROSS, and MORROW, Circuit Judges.

MORROW, Circuit Judge, after stating the foregoing facts, de- livered the opinion of the court.

The indictment charged the defendant with the crime of robbery., This offense, under the Criminal Code of Alaska, is a felony. Section 26, c. 2, tit. 1, and section 184, c. 13, tit. 1, Act March 3, 1899, pro- viding a Code of Criminal Procedure for the district of Alaska (30. Stat. 1253, 1255, 1256, 1282). Under the statute the defendant was entitled to 10 peremptory challenges. Section 135, c. 14, tit. 2, Act March 3, 1899 (30 Stat. 1299). With respect to the right of the de- fendant to challenge a juror peremptorily or for cause, chapter 14 of title 2 of the Criminal Code provides as follows:

"Sec. 121. * * * A challenge is an objection to a particular juror, and. may be either, first, peremptory, or, second, for cause.

"Sec. 122. That a peremptory challenge is an objection to a juror for which· no reason need be given, but upon which the court shall exclude him.

"Sec. 123. That a challenge for cause is an objection to a juror, and may be either: First. General; that the juror is disqualified from serving in any action; or Second. Particular; that he is disqualified from serving in the· action on trial."

"Sec. 125. That particular causes of challenge are of two kinds: * * * Second. For the existence of a state of mind on the part of a juror in reference to the action or to either party which satisfies the trier, in the exercise of a sound discretion, that he cannot try the issue impartially and: without prejudice to the substantial rights of the party challenging, and which is known in this code as actual bias."

"Sec. 127. That a challenge for actual bias may be taken for the cause· mentioned in the second subdivision of section 128 (125). But on the trial of such challenge, although it should appear that the juror challenged has· formed or expressed an opinion upon the merits of the cause from what he· may have heard or read, such opinion shall not of itself be sufficient to· sus- tain the challenge, but the court must be satisfied, from all the circum- stances, that the juror cannot disregard such opinion and try the issue im- partially."

"Sec. 129. That all challenges shall be taken first by the defendant and' then by the plaintiff, and the defendant shall exhaust his challenges to a particular juror before the plaintiff begins. All challenges shall be taken to· each juror as he is drawn and appears, and before another juror is drawn,.

unless the court, for good cause shown, shall permit a challenge to be taken afterwards, and before the number of the jury is completed.

"Sec. 130. That the challenge of either party shall be taken separately, in the following order, including in each challenge all the causes of challenge belonging to the same class: First. For general disqualification. Second. For implied bias. Third. For actual bias. Fourth. Peremptory; but either party may take peremptory challenge at any time before his right of challenge ceases."

"Sec. 136. That as soon as the number of the jury has been completed, an oath or affirmation shall be administered to the jurors in substance, that they and each of them will well and truly try the matter in issue between the plaintiff and defendant, and a true verdict give according to the law and evidence as given them on the trial."

By the act of May 17, 1884, providing a civil government for Alaska, the general laws of the state of Oregon then in force were declared to be the law in said district, so far as the same should be applicable, and not in conflict with the provisions of the laws of the United States. 23 Stat. 24–26. When the act of March 3, 1899, was before congress, it was stated that the act was reported by the committee on revision of the laws, and that with one or two exceptions it was a codification of the laws of Oregon upon the subject to which it related. The sections of that act which we have just quoted are found almost verbatim in title 2 of the Oregon Code of Civil Procedure (sections 180–195, Hill's Ann. Laws Or.). The procedure adopted in impaneling the jury in this case appears to have been in accordance with the practice pursued under the same statute in Oregon, with the exception that in the present case the jurors were severally sworn to try the case immediately upon the completion of their individual examinations. The practice in Oregon is the same in both civil and criminal actions. The clerk draws from the trial jury box of the court one by one the ballots containing the names of the jurors, and as the jurors are called they are examined, and all challenges, including peremptory, are taken as each juror is drawn and examined, and before another is called. As soon as the number of the jury is completed, and not before, the oath is administered to the whole body of 12 jurors, or their affirmations taken. This is clearly the requirement of sections 120 and 136 of the Alaska Criminal Code and sections 180 and 195 of the Oregon Code (Hill's Ann. Laws Or.).

It is contended by the plaintiff in error that his right "to take a peremptory challenge at any time before his right of challenge ceases," as provided in the fourth paragraph of section 130, continued until there were in the jury box 12 persons whom the court adjudged competent jurors. But, construing this paragraph in connection with the requirements of other sections of this chapter, we do not understand this to be its meaning. Section 129 prescribes the order in which the parties shall exercise their rights of challenge, and section 130 classifies the several grounds of challenge, and fixes the order in which they shall be taken. The fourth subdivision of the latter section fixes the peremptory challenge as the last in order, and for obvious reasons provides that it may be taken at any time before the right of challenge ceases,—that is to say, it may, for the purpose of expediting the trial, be taken as soon as the juror is called into the box, and before any examination is had as to his qualifications as a juror; or the order of

examination may be interrupted, and the peremptory challenge interposed at any time before the examination in the order prescribed has been completed; or for good cause the court may permit a challenge to be taken afterwards, and before the number of the jury is completed, as provided in section 129. An objection to this interpretation of the fourth paragraph of section 130 is based upon the fact that this paragraph is identical with the fourth paragraph of section 182 of the Civil Code of Alaska (31 Stat. 360), where substantially the procedure contended for by the plaintiff in error is provided for the formation of a jury in civil cases. Section 181 of that Code provides: ·

"The defendant first and afterwards the plaintiff shall challenge for cause. And when a challenge has been sustained the vacancy shall be filled before further challenge is made. And any new juror may at any time be challenged for cause by either party to the action. When the panel is full the defendant shall have one peremptory challenge, followed by one by the plaintiff, and so on alternately until each side has exhausted its right to such challenge."

Because under the express terms of the two codes the right to a peremptory challenge ceases at one time in a civil action and at another time in a criminal action is no reason why the paragraph under consideration in the two codes should be held to mean the same thing, and that such meaning is that the right to a peremptory challenge does not cease in a criminal action until there are 12 jurors in the jury box, whom the court has adjudged competent to serve as jurors in the case. Indeed, the purpose of congress to prescribe in the Civil Code a different method of procedure in obtaining a jury in a civil action from that previously prescribed in the Criminal Code for a criminal action is conclusively determined by a comparison of the sections of the two codes relating to the subject. The objection that such a construction of the two codes attributes to congress the intention of placing property rights on a higher plane than human rights does not authorize the court to change the plain language of a statute. Besides, this distinction has been made in the statutes of the several states of the Union, and the distinction has been sustained by the courts. In People v. Scoggins, 37 Cal. 676, 680, the supreme court of California, commenting upon a like distinction in the civil and criminal practice acts of the state, said: ·

"This variance between the methods of selecting juries in criminal and civil actions was probably dictated by the supposed necessity of placing the jurors in a criminal action under the control of the court during the process of forming the jury. In important cases many days are often consumed in selecting a jury, and during this interval it was doubtless deemed important to secure the jurors who had been accepted against improper influences by placing them under the control of the court; and hence the provision in section 341 that the challenge 'must be taken when the juror appears, and before he is sworn,' unless, for good cause, the court shall permit it to be taken after he is sworn, 'and before the jury is completed.' "

It is assigned as error that the court erred in not permitting the defendant to challenge peremptorily Ike Powers after 12 jurors were in the jury box, and while the defendant had the right to one peremptory challenge remaining. This juror was the twelfth juror called to the jury box, and the fifth juror examined and passed and sworn

to try the case. It may be conceded that under section 136 of the Criminal Code this juror was sworn prematurely, as the jury had not then been completed. But he had been examined and passed in regular order as a juror without objection, and no cause was assigned for the exercise of this challenge afterwards, except the desire of the defendant to have the benefit of all the challenges allowed him by law; and he appears to have preferred to exercise his right to challenge against the juror Powers rather than against the juror West, the last juror examined. This was not a sufficient cause to entitle the defendant to exercise his right of peremptory challenge against this juror at that time, even though the jury had not been sworn. State v. Armington, 25 Minn. 29; State v. Scott, 41 Minn. 365, 43 N. W. 62.

The action of the court in denying to the defendant the right to challenge peremptorily the juror West is assigned as error. When this request was made the juror had been examined and passed for cause, and peremptorily challenged, and had been sworn as the twelfth juror in the case. The district attorney had also made a statement of the case on behalf of the prosecution, and the evidence by which he expected to sustain it. The reason given by the defendant in support of his request was that he had learned that the juror expressed an opinion as to the guilt or innocence of the defendant unfavorable to him. Had this request been made, and the reason for it given, before the jury was completed, the court would have been authorized, under section 129, to grant the request; but after the entire body of 12 jurors had been accepted and sworn, and the case for the prosecution opened to the jury, the request came too late.

Five jurors were challenged by the defendant for actual bias, and the challenge denied. The action of the court in denying this challenge is assigned as error. But these jurors were excluded by the defendant from the panel that tried the case by peremptory challenges, and when the jury was finally completed and sworn his peremptory challenges had not been exhausted. These jurors did not sit on the trial of the case. They did him no harm. Their biased views of the case, if such they had, did not enter into the verdict. The defendant cannot complain if a challenge for cause is denied unless some substantial right is prejudiced by such action, and no substantial right is denied to the defendant if, after excluding objectionable jurors by peremptory challenges, he has peremptory challenges left to him when the jury is finally completed. Hopt v. Utah, 120 U. S. 430, 436, 7 Sup. Ct. 614, 30 L. Ed. 708; Spies v. Illinois, 123 U. S. 131, 168, 8 Sup. Ct. 21, 31 L. Ed. 80; People v. Larubia, 140 N. Y. 87, 89, 35 N. E. 412.

The defendant challenged the juror Gibson for actual bias. The challenge was denied; and although the defendant had then two peremptory challenges left to him, he omitted to interpose this challenge, and the juror was sworn to try the case. We are of opinion that the assignment of error with respect to the action of the court in overruling the challenge to this juror for actual bias is properly before us for review. The fact that the defendant had a peremptory challenge left him, which he might have exercised when this juror was sworn, is a circumstance that may be considered, with the evidence obtained in

his examination, in determining whether the juror was legally disqualified to sit on the trial of the case; but we do not think the defendant is compelled to exercise his right of peremptory challenge against a person whose condition of mind is found upon examination to render him legally disqualified to act as a juror in the case. The defendant may, under such circumstances, withhold his peremptory challenge for the contingency provided by law, namely, to secure the benefit of "an objection to a juror for which no reason need be given." Was the juror Gibson disqualified under the statute? When under examination touching his qualifications to act as a juror, he said that he did not hear any of the testimony in the case of United States against Allen; that he was not present in the court room; that he had heard some one discuss this case (United States against George Hawkins); that the persons who were discussing the case did not pretend to be witnesses in the case; they said they were listening to the trial; that they did not pretend to relate to him what the testimony in the case was; that he had read an account of the case in the newspapers; that he had read what purported to be portions of the testimony given in the case; that he thought he had read in the papers what purported to be the testimony of more than one witness; that he thought he read all the testimony there was in the papers; that from what he read in the papers he formed an opinion as to the guilt or innocence of the defendant George Allen; that that opinion was a fixed and decided opinion,—such an opinion as would require evidence to change; that he thought, from what he had heard and read, if he were selected as a juror in this case, he would go into the jury box with an opinion as to the guilt or innocence of the accused George Hawkins; that at the time he read the testimony in the papers he believed it to be a true account of the testimony in the case then upon trial; that the opinion which he formed was such an opinion as would require some evidence to remove; if the same evidence were produced (on the trial of George Hawkins) it would take some evidence to remove his opinion; that the opinion which he had at the time (he was testifying) as to the guilt or innocence of the defendant George Hawkins was based upon rumors, and also upon the statement he had read in the papers; that he did not know of any reason why he could not be a fair and impartial juror in the case. Thereupon the juror was challenged by counsel for the defendant for actual bias. Upon examination by the district attorney the juror continued to testify as follows:

"That he did not know what the evidence in this case was. That he didn't know, as a matter of fact, whether what he had read in the newspapers was the evidence in the case of the United States against George Allen. It was simply a newspaper version of what had occurred. That he supposed that it was the evidence in the case. That he did not know, as a matter of fact, that it was the evidence in the case. That at the time of reading it it did not create any impression in his mind as to the guilt or innocence of the defendant George Hawkins. That he had no opinion, at the present time, as to whether or not the defendant George Hawkins was guilty. That if he were selected as a juror, and sworn to try this case, he thought he could consider it fairly and impartially, and arrive at his verdict from the law and the evidence produced at the trial."

We do not think that this testimony established the legal conclusion that Gibson was disqualified to act as a juror in the case. It is true

he had formed a fixed and decided opinion as to the guilt or inno-cence of the codefendant George Allen, and from what he had heard and read he testified that he would go into the jury box with an opin-ion as to the guilt or innocence of the accused. But upon further examination he said that he had no opinion at that time as to whether the defendant was guilty, and, if selected as a juror, he would try the case impartially, and arrive at a verdict from the law and evidence produced upon the trial. Upon such testimony it was the province of the trial court to determine from all the circumstances whether the juror could try the case impartially or not. There were at that time ten jurors in the box, sworn to try the case, against whom no chal-lenge for actual bias or other cause had been interposed. Only two jurors were required to complete the trial jury. The defendant had then remaining to him two peremptory challenges; and while, perhaps, it is immaterial in determining the present question, it is still a fact that when the jury was finally completed he had one peremptory chal-lenge left. Under these circumstances, we cannot say that the court erred in overruling defendant's challenge to the juror for actual bias.

While the court was engaged in impaneling the jury, a question by counsel for the defendant to a juror under examination "as to whether he had an opinion as to the guilt or innocence of the defendant George Allen" was answered by the court by the remark, "That is one of the things that is an established fact in this community." This statement of the court in the presence of the juror was objected to by counsel for the defendant, and is assigned as error. The juror under examination when this remark was made was the ninth juror called to the box, and the third juror sworn to try the case. It was, in effect, a declaration on the part of the court that the robbery was an established fact, not merely in the judgment of the jury that tried the case, but in the opin-ion of the entire community, including the jurors from which a trial jury was then being drawn; that one of the parties charged jointly with the defendant with the commission of the crime was guilty of the offense charged; and that the only question in the pending case was whether or not the defendant then on trial was a party to the crime. We think this was error. The trial of the defendant Allen had just been concluded. The record before us discloses the fact that the challenges interposed against jurors for bias in the case on trial were because of opinions formed by them as to the guilt of the defend-ant upon the evidence taken upon that trial, and which they had heard or read. Under such circumstances the remark of the court certainly had the effect of prejudicing the defendant's case in the minds of the jurors,—a prejudice which was not removed or modified by any quali-fication or instruction subsequently given to the jury. For this error the judgment must be reversed, and the case remanded for a new trial.

The other errors assigned may not arise upon a new trial, and there-fore do not call for comment at this time. The judgment is reversed.

ROSS, Circuit Judge, concurs in the judgment and in what is said in the opinion on the last point considered therein.